UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN BRISENO, | ) |
| Plaintiff, | ) |
| v. | ) 14-CV-2263 |
| SHERIFF BUKOWSKI, C/O ROBERTS, C/O O'NEIL, C/O TOBECK, C/O PERKINS, and C/O PAQUETTE, | ) |
| Defendants. | ) |

## MERIT REVIEW OPINION

**JOE BILLY MCDADE, U.S. District Judge.**

Plaintiff, proceeding pro se and incarcerated in the Jerome Combs Detention Center, seeks leave to proceed in forma pauperis. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. Turley v. Rednour, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts

must be provided to "'state a claim for relief that is plausible on its face.'" Alexander v. U.S., 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

## ALLEGATIONS

On August 26, 2014, Plaintiff was in the dayroom of the Jerome Coombs Detention Center when a fight broke out between two detainees. Plaintiff tried to break up the fight, whereupon another detainee came "out of nowhere" and started attacking Plaintiff. (Aff. of Demetrius Moore, attached to Complaint; Complaint, p. 4.) Plaintiff allegedly tried to escape the attack by running to a door, but Officers Roberts and Paquette refused to open the door. Plaintiff called repeatedly for help while the detainee continued to strike Plaintiff about the face with closed fists. After a "very long time," Officer Roberts came into the dayroom and tasered Plaintiff in the stomach with no warning, even though Plaintiff had not been the aggressor and had not disobeyed any orders. Officers Perkins, O'Neil, Paquette, and Tobeck allegedly stood by and failed to intervene to prevent Officer Roberts' tasering. (Complaint, paras. 1-3.)

Plaintiff also alleges that Sheriff Bukowski fosters an environment which condones or turns a blind eye to the kind of alleged excessive force used on Plaintiff by Officer Roberts. Plaintiff alleges that:

> There is no effective training, oversight or accountability of J.C.D.C. staff. There's a lack of professionalism and the staff are violent, sadistic, cruel and racist. These c/o's feel that they are justified to shoot a pre-trial detainee at any time for any reason with a taser . . . .

(Complaint, para. 7.) Plaintiff alleges that officers are permitted to taser a detainee if the detainee is wearing his identification badge incorrectly and for other minor infractions. The Jail administration allegedly conceals the unlawful acts of the Jail's employees, especially unlawful acts as to detainees with mental illnesses. (Complaint, para. 8.) Because of Officer Roberts' tasering, Plaintiff's anxiety has worsened. He allegedly has trouble sleeping and wakes up in "cold sweats." (Complaint, para. 4.)

## ANALYSIS

Plaintiff does not expressly state that he was a pretrial detainee when the incident occurred. For purposes of this order, the Court assumes that Plaintiff was a pretrial detainee, rather than

an inmate serving his conviction. The difference is important because the legal standard for an excessive force claim under the Fourteenth Amendment, which applies to detainees, is arguably different than the legal standard for an excessive force claim under the Eighth Amendment, which applies to inmates serving their sentences. Liability arises under the Eighth Amendment when an officer uses force "maliciously and sadistically for the very purpose of causing harm." Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010)(affirming dismissal of Eighth Amendment excessive force claim at merit review stage where Plaintiff admitted he had been fighting and officers had used mace and handcuffs). A Fourteenth Amendment excessive force claim is based on a more objective approach, though the officer's subjective intent is still relevant. Kingsley v. Hendrickson, 744 F.3d 443, 453 (7th Cir. 2014)(Fourteenth Amendment excessive force claim requires at least reckless intent).

A failure-to-protect claim, in contrast, is essentially the same standard whether the plaintiff is a pretrial detainee or an inmate. For a failure-to-protect claim, the allegations must allow a plausible inference that the defendants were deliberately indifferent to a

an inmate serving his conviction. The difference is important because the legal standard for an excessive force claim under the Fourteenth Amendment, which applies to detainees, is arguably different than the legal standard for an excessive force claim under the Eighth Amendment, which applies to inmates serving their sentences. Liability arises under the Eighth Amendment when an officer uses force "maliciously and sadistically for the very purpose of causing harm." Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010)(affirming dismissal of Eighth Amendment excessive force claim at merit review stage where Plaintiff admitted he had been fighting and officers had used mace and handcuffs). A Fourteenth Amendment excessive force claim is based on a more objective approach, though the officer's subjective intent is still relevant. Kingsley v. Hendrickson, 744 F.3d 443, 453 (7th Cir. 2014)(Fourteenth Amendment excessive force claim requires at least reckless intent).

A failure-to-protect claim, in contrast, is essentially the same standard whether the plaintiff is a pretrial detainee or an inmate. For a failure-to-protect claim, the allegations must allow a plausible inference that the defendants were deliberately indifferent to a

known and substantial risk of serious harm. Brown v. Budz, 398 F.3d 904, 909, 913 (7th Cir.2005)(analyzing civil detainee's failure-to-protect claim using Eighth Amendment standards). Deliberate indifferences means that the defendants knew about and consciously disregarded a substantial risk of serious harm, failing to take reasonable measure to deal with that risk. Id. at 914.

At this point Plaintiff's allegations allow a plausible inference that Officer Roberts used excessive force. According to Plaintiff, Officer Roberts tased Plaintiff, even though Plaintiff posed no security risk, did not disobey any orders, and was being attacked. Additionally, a plausible failure-to-protect claim is stated against Officers Roberts and Paquette, who allegedly watched while Plaintiff was attacked and refused to allow Plaintiff out of the dayroom or quickly enter the dayroom to stop the attack. A developed factual record at summary judgment may show otherwise, but the Court believes dismissal of these two claims would be premature. However, no allegations suggest that Officers Perkins, O'Neil, or Tobeck watched while Plaintiff was attacked, so no failure-to-protect claim proceeds against them at this point.

Plaintiff asserts that Officers Perkins, O'Neil, Tobeck, and Paquette failed to intervene to stop Officer Roberts' alleged excessive force. A failure to intervene claim arises only if the officers at the scene knew that Officer Roberts was going to use excessive force and had a realistic opportunity to prevent that excessive force. Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014)(no failure to intervene claim where other officers had no time to stop one alleged act of excessive force). According to Plaintiff's own allegations and the affidavits attached to the complaint, Officer Roberts came through the door, "said not one word or warning to anyone," (Complaint, para. 2), and tasered Plaintiff once in the stomach. These allegations do not allow a plausible inference that the other officers had a reasonable opportunity to stop Officer Roberts from tasing Plaintiff. At this point, Plaintiff's failure to intervene claim will be dismissed, without prejudice.

As to Sheriff Bukowski, he was not present during the incident. However, Plaintiff alleges that Sheriff Bukowski has implemented a policy of condoning or turning a blind eye to the unnecessary use of tasers against detainees and has failed to train

his employees on the appropriate use of tasers.  The evidentiary burden on this kind of claim is high:

> The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality or private corporation, but as with any other policy or practice for which the plaintiff seeks to hold the municipal or corporate defendant liable, the plaintiff must show that the failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact.

*Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012).  However, dismissal of an unconstitutional policy claim against the Sheriff would be premature.

On a separate matter, Plaintiff moves for the appointment of pro bono counsel.  Plaintiff appears competent to proceed pro se in light of the relatively simple nature of his claims.  Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007).  Plaintiff's complaint demonstrates that he has personal knowledge of many of the relevant facts underlying his claims, as well as knowledge of the applicable law and legal procedure.  Plaintiff should also be able to obtain additional relevant evidence through discovery requests.  Plaintiff may renew his

request for counsel on a more developed record. If Plaintiff renews his request for counsel, Plaintiff should set forth his educational level and any jobs he has held inside or outside prison.

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states the following constitutional claims: (1) excessive force claim against Defendant Roberts; (2) failure-to-protect claim against Defendants Roberts and Paquette; and, (3) an unconstitutional policy or practice claim against Sheriff Bukowski in his official capacity regarding the use of tasers.

2) Plaintiff's failure to intervene claim is dismissed, without prejudice.

3) Defendants Perkins, O'Neil, and Tobeck are dismissed, without prejudice.

4) This case proceeds solely on the claims identified in paragraph one. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

5) Plaintiff's request in his Complaint to add Kankakee County as a necessary party for purposes of indemnification is granted. 745 ILCS 10/9-102.

6) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

7) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from the date the waiver is sent to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

8) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said

Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Opinion. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

10) This District uses electronic filing, which means that, after Defense counsel has filed an appearance, Defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery

requests and responses.  Discovery requests and responses are not filed with the Clerk.  Plaintiff must mail his discovery requests and responses directly to Defendants' counsel.  Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel.  Discovery does not begin until Defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

    11)    Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

    12)    Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

    13)    If a Defendants fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on that Defendant and will require that Defendant

to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

14) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel.

15) **Plaintiff's motion for counsel is denied (5).**

16) **Plaintiff's motion for status is denied as moot (9).**

17) **The clerk is directed to add Kankakee County as a Defendant**.

18) **The clerk is directed to terminate Defendants Perkins, O'Neil, and Tobeck**.

19) **The clerk is directed to attempt service on Defendants pursuant to the standard procedures.**

20) **The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED: 5/12/2015

FOR THE COURT:

                              **s/Joe Billy McDade**
                              JOE BILLY MCDADE
                              UNITED STATES DISTRICT JUDGE